UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HSBC BANK USA, NATIONAL ASSOCIATION, AS
TRUSTEE FOR FREMONT HOME LOAN TRUST 2005-
D, MORTGAGE-BACKED CERTIFICATES, SERIES
2005-D,

                                      Plaintiff,

   - against -

                                      **OPINION & ORDER**

CLAUDETTE WHYTE; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.; BANC OF               No. 24-CV-7483 (CS)
CALIFORNIA, SUCCESSOR OF CAPITALSOURCE
BANK, SUCCESSOR OF FREMONT INVESTMENT &
LOAN; PROPERTY OCCUPANT, "JOHN DOE #2"
through "JOHN DOE #12," said names being fictitious and
unknown to plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the premises
described in the Complaint,

                                   Defendants.
-------------------------------------------------------------------x

Appearances:

Eric S. Sheidlower
Robertson, Anschutz, Schneid, Crane & Partners, PLLC
Westbury, New York
*Counsel for Plaintiff*

Michael P. Gippetti
Fine Law Office
Babylon, New York
*Counsel for Defendant*

Seibel, J.

      Before the Court is Defendant Claudette Whyte's response to the Court's Order to Show

Cause for Default Judgment and Judgment of Foreclosure and Sale, (ECF No. 52), which the

Court construes as a motion to set aside the entry of default, (ECF No. 57),[1] and Plaintiff's reply thereto, (ECF No. 58).  For the following reasons, Defendant's motion is DENIED.

## I. BACKGROUND

Plaintiff HSBC initiated this action seeking to foreclose on a mortgage encumbering a property owned by Defendant Claudette Whyte in Mount Vernon, New York.  (*See generally* ECF No. 1 ("Compl.").)  The Complaint alleges that in 2005 Defendant executed a note for $448,592 to Fremont Investment & Loan, and a mortgage for the same amount to Mortgage Electronic Registration Systems, Inc. as nominee for Fremont Investment & Loan.  (*Id.* ¶ 11(a).)  The mortgage was subsequently assigned to Plaintiff.  (*Id.* ¶ 11(b).)

After the loan was modified in 2008, (*id.* ¶ 12), Defendant failed to make payments pursuant to the modified agreement, and foreclosure proceedings were initiated against her in 2010, (*see* ECF No. 57 ("D's Opp.") at 6; ECF No. 58 ("P's Reply") at 3).  The foreclosure action was voluntarily discontinued pursuant to a second loan modification agreement into which the parties entered in 2014.  (P's Reply at 3; *id.* Ex. A; Compl. Ex. E at 8-15.)  Beginning in 2022, however, Defendant was unable to stay current on her payments, and to date she has failed to make the monthly payments due September 1, 2022 or thereafter.  (Compl. ¶ 17; ECF No. 49 Ex. I ("Lopez Aff.") ¶ 9; *id.* Ex. P at 9-10; 54; *id.* Ex. E at 4; ECF No. 57-1 ("D's Aff.") ¶ 8.)  Plaintiff thus filed its Complaint in this action on October 2, 2024.

Although Defendant was served with the Complaint on November 6, 2024, (*see* ECF No. 31), she failed to answer or otherwise respond to the Complaint, and the Clerk entered her

---

[1] "Once a default has been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion." *Manz v. Rest. Los Tacos No. 1*, No. 24-CV-7457, 2025 WL 1541057, at *2 (S.D.N.Y. May 30, 2025).  Unless otherwise indicated, any case quotations cited in this Opinion omit internal quotation marks, citations, alterations and footnotes.

default on February 13, 2025, (ECF No. 39).  On May 6, 2025, pursuant to this Court's Individual Rules of Practice, Plaintiff filed a proposed order to show cause for a default judgment, with supporting papers, (ECF Nos. 46-49, 51), and on May 7, 2025, the Court issued the order to show cause ("OSC"), returnable on June 10, 2025 at 9:45 a.m., with opposition papers due June 3, 2025, (ECF No. 52).[2]

At 9:41 a.m. on June 10, attorney Michael Gippetti emailed the Court advising that he had been retained by Defendant the week before and requesting a one-month adjournment to apply for admission *pro hac vice* and submit an opposition.  (*See* ECF No. 54.)  He did not provide any explanation for his client's failure to timely respond to the Complaint or the OSC.  Nonetheless, the Court granted a brief extension, rescheduling the return date for June 24, 2025 and ordering Mr. Gippetti to file his application for admission *pro hac vice* in the next few days and Defendant's opposition papers no later than June 17, 2025.  (*Id.*)  When Mr. Gippetti failed to do either, the Court issued an order on June 18, 2025, directing him to show cause in writing, no later than June 20, 2025, why he should not be held in contempt or otherwise sanctioned for his failure to comply with the Court's previous order.  (ECF No. 55.)  On June 19, 2025, Mr. Gippetti emailed the Court a letter advising that he had been unable to file anything on the docket due to technical difficulties.  (ECF No. 56.)  He emailed his motion to appear *pro hac vice* to the Court on June 20, 2025.  On June 23, 2025, Mr. Gippetti emailed, but still has never filed,

---

[2] The Complaint also alleges, upon information and belief, that there are subordinate mortgages on the property held by Mortgage Electronic Registration Systems, Inc. and Banc of California, as well as a senior mortgage held by JP Morgan Chase Bank, N.A.  (Compl. ¶¶ 4-6.)  The registered agent for these organizations accepted service in October 2024.  (*See* ECF Nos. 17-19; ECF No. 37-1.)  JP Morgan was dismissed as a party on February 21, 2025.  (ECF No. 45.)  Despite being served with the OSC via certified mail on May 8, 2025, (*see* ECF No. 53), Mortgage Electronic Registration Systems, Inc. and Banc of California have failed to appear or otherwise oppose the default.

a document entitled "Memorandum of Law in Opposition to Plaintiff's Motion for a Judgment of Foreclosure and Sale," in which he argued that genuine issues of material fact existed as to Plaintiff's standing to foreclose and its showing of Defendant's default.[3]

At the June 24 conference – for which Mr. Gippetti appeared almost twenty minutes late – he presented arguments opposing the foreclosure, but seemed unaware that the issue was whether the entry of default should be vacated, appeared to be unfamiliar with the governing standard, and was not prepared to present any arguments on that subject. (*See* Minute Entry dated June 24, 2025.) The Court therefore directed him to submit Defendant's opposition to Plaintiff's application for default judgment, as well as her application for vacatur of the entry of default, by June 30, 2025. (*Id.*) He was also ordered to submit his *pro hac vice* motion no later than June 27, 2025. (*Id.*) After sending several additional emails to chambers regarding his purported technical difficulties with filing motions on the docket, Mr. Gippetti filed Defendant's opposition on July 2, 2025, (ECF No. 57), and Plaintiff filed its reply on July 10, 2025, (ECF No. 58). After again being prompted by the Court, Mr. Gippetti filed his motion to appear *pro hac vice* on the docket on July 16, 2025, (ECF No. 59), and the Court granted it the same day, (ECF No. 60).

## II.  LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once the default has been entered, the plaintiff may move for a default judgment pursuant to Federal Rule of Civil Procedure ("FRCP") 55(b). *See Llumitasig v. Barrier Grp. Inc.*, No. 24-CV-2054, 2025 WL 1309846, at *5 (E.D.N.Y. Apr. 2, 2025). FRCP 55(c) permits litigants to petition the court to "set aside an entry of default for

---

[3] Mr. Gippetti is ordered to file that document forthwith.

4

good cause." Fed. R. Civ. P. 55(c); *see Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). "[T]he Second Circuit has established three criteria that district courts must consider in deciding whether to relieve a party from a default: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Durso v. Mod. Food Ctr., Inc.*, No. 17-CV-7324, 2019 WL 2150424, at *4 (S.D.N.Y. May 17, 2019) (citing *Enron*, 10 F.3d at 96); *see Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981).

While "defaults are generally disfavored and are reserved for rare occasions," default procedures "provide a useful remedy when a litigant is confronted by an obstructionist adversary" and "play a constructive role in maintaining the orderly and efficient administration of justice." *Enron*, 10 F.3d at 96. Thus, a default judgment is appropriate where the "defendant fails to show that their default was not deliberate, fails to meet their burden of offering evidence sufficient to establish a complete defense, and/or fails to show that the plaintiff would not suffer prejudice in the event the default is vacated." *NLD Rochester LLC v. 440 Lake Ave., LLC*, 686 F. Supp. 3d 248, 252 (W.D.N.Y. 2023); *see Meehan*, 652 F.2d at 277. "The determination of whether to set aside a default is left to the sound discretion of the judge, the person who is most familiar with the circumstances of the given case and in the best position to evaluate the good faith and credibility of the parties." *Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025); *see Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 337 (S.D.N.Y. 2013).

### III.  DISCUSSION

As a threshold matter, Plaintiff argues that Defendant's opposition should not be considered because it was not timely filed. (P's Reply at 1-2.) While Plaintiff is correct that

5

Defendant repeatedly missed the deadlines set by the Court for submitting her opposition, the Court nonetheless has discretion to consider her arguments. *See Chevron Corp. v. Donziger*, No. 11-CV-691, 2020 WL 8461584, at *1 n.1 (S.D.N.Y. Jan. 27, 2020). Given Mr. Gippetti's repeated claims of technical difficulties and the fact that default judgments are generally disfavored, the Court will analyze (although ultimately reject) Plaintiff's arguments in opposition.

    A.    **Willfulness**

Of the three factors, "willfulness carries the most weight. Though each factor is to be considered, a default should not be set aside when it is found to be willful." *Ramus v. Bruwer*, No. 23-CV-1770, 2024 WL 1139106, at *3 (S.D.N.Y. Mar. 15, 2024); *see Wilmington Tr., Nat'l Ass'n v. Rafiq*, No. 22-CV-6177, 2023 WL 6237680, at *2 (S.D.N.Y. Sept. 26, 2023). "While a showing of more than negligence or gross negligence is required, the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Durso*, 2019 WL 2150424, at *5; *see Ramus*, 2024 WL 1139106, at *4 ("[A] finding of willfulness is appropriate where there is evidence of bad faith or where a defendant's default is the result of egregious or deliberate conduct."). "Courts have held defaults to be willful when a defendant simply ignores a complaint without action, or when a lawyer neglects a case for an extended period of time." *Staples, Inc. v. W.J.R. Assocs.*, No. 04-CV-904, 2005 WL 820496, at *3 (E.D.N.Y. Apr. 7, 2005).

Defendant was served with the Complaint in November 2024, and she does not deny that she received the Complaint and was on notice of Plaintiff's suit. (*See generally* D's Aff.) Typically, where a defendant was properly served, willfulness is presumed. *See Trs. of N. Atl. States Carpenters Health, Pension, Annuity, Apprenticeship, & Lab. Mgmt. Coop. Funds v. Nu Wave Gen. Contracting LLC*, No. 21-CV-5104, 2023 WL 11261909, at *3 (E.D.N.Y. Nov. 2,

2023) ("Where a party was properly served with a summons and complaint and fails to answer or otherwise respond thereto, the default will be deemed willful.").

Defendant argues that her default was not willful because she was engaging in "repeated efforts to secure a loan modification," which Plaintiff "unreasonably refused to review or process" in "good faith."  (D's Opp. at 3; *see* D's Aff. ¶ 16.)  But as Defendant seemingly concedes by accusing Plaintiff of unreasonably denying her modification request, Plaintiff never indicated that another modification would be granted.  Indeed, the letters attached to Defendant's opposition demonstrate that Plaintiff gave her no reason to believe that a modification was likely.  First, Defendant was notified on April 3, 2024, that she was no longer eligible for a loan modification that she had been offered previously, as she had "failed to return the final modification agreement within the required timeframe." (*See* ECF No. 57-5 at 5.)  She was again notified on April 23, 2025 that her account was denied for additional mortgage assistance options and that Plaintiff was entitled to proceed with the foreclosure.  (*See id.* at 2.)[4]  Yet she failed to take any action in response to this lawsuit until June 10, 2025, seven months after she had been served and only moments before the conference during which she was ordered to show cause why a default judgment should not be entered against her.[5]

---

[4] Plaintiff argues, correctly, that Defendant's claim that she has sufficient income to qualify for a modification is based solely on hearsay. (P's Reply at 4.)  But even if I were to assume that Defendant was eligible for a modification, it does not appear that Plaintiff gave her any reason to believe that a modification would be granted, and certainly not in such definitive terms that she would be justified in disregarding the lawsuit pending against her.

[5] Defendant argues that she "took the initiative to retain legal counsel and to appear in this action upon receiving notice of Plaintiff's motion for a default judgment against her." (D's Opp. at 5.)  According to the email received from Mr. Gippetti on June 10, 2025, "[o]ur office was retained by Claudette Whyte late last week to represent her in this matter" – that is, close to a month after Defendant would have received the OSC, which was mailed to her on May 8, 2025.  According to the affidavit of a Loan Modification Specialist and Case Manager at Mr. Gippetti's firm, Defendant retained the firm on or about November 1, 2024 to seek a loan modification.  (ECF No. 57-2 ¶ 4.)  It thus appears that while Defendant was working with the

7

Defendant also claims that she was "confused about this foreclosure action" due to the "2010 Action which did not reach a final resolution." (D's Opp. at 5.) As discussed more fully below, the 2010 action, which was disposed of in 2014, has no bearing on the instant action, and Defendant could not have seriously believed that that action somehow entitled her to disregard this one. Even if Defendant could have asserted a defense to foreclosure based on the previous action – which, as discussed below, she cannot – that does not explain her failure to respond to the Complaint in this case. Even accepting that Defendant did not "appreciate the urgency or necessity of responding to the complaint" due to confusion about the loan modification and the effect of the 2010 action, (D's Aff. ¶ 12),[6] she provides no basis on which this would relieve her (or on which she thought it would relieve her) of the obligation to respond to the complaint, of which she was admittedly on notice, (id. ¶ 11). Indeed, rather than demonstrating that her default was unintentional or negligent, this excuse "only serves to suggest that [she] actually considered the question of whether to attempt to avoid defaulting, and chose, instead, to simply wait." *Staples*, 2005 WL 820496, at *4. Such a decision evinces willfulness and renders a default judgment appropriate. *See id.*; *see also Rochester Laborers' Welfare-S.U.B. Fund by Brown v. Flower City Monitors, Inc.*, No. 15-CV-6446, 2017 WL 3033787, at *4 (W.D.N.Y. July 18, 2017) ("[A] finding of bad faith is not a necessary predicate to concluding that a defendant acted

---

firm to seek a modification, she either did not inform the firm that a foreclosure action had been commenced or she did but she and her counsel chose not to appear. Either way, the disregard of this action appears willful. Moreover, far from showing initiative, it is hard to avoid the conclusion that, by waiting until minutes before the OSC was returnable to contact the court, Defendant and/or her counsel were intentionally delaying her appearance in an effort to drag out the matter.

[6] Defendant concedes that she was not aware of potential defenses that the 2010 action might provide until she was advised by her attorney, (D's Aff. ¶ 14), who was not retained until after the default had been entered, (*see* Minute Entry dated June 10, 2025; ECF No. 56).

8

willfully. Instead, to support a finding of willfulness, it is sufficient that the defendant[] defaulted deliberately."). This factor thus weighs in favor of default.

### B. Prejudice

"To establish prejudice . . ., it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud or collusion." *Guthrie v. Rainbow Fencing Inc.*, 349 F.R.D. 55, 71 (E.D.N.Y. 2025). "[D]elay standing alone does not establish prejudice." *Gench v. HostGator.com LLC*, No. 14-CV-3592, 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015), *report and recommendation adopted*, 2015 WL 4579147 (S.D.N.Y. July 29, 2015).

The conduct of Defendant and her counsel has certainly inconvenienced Plaintiff (as well as the Court). After Defendant failed to respond to the complaint for seven months, her attorney at the eleventh hour requested to adjourn the return of the OSC, for which Plaintiff's attorney and Court staff were already present, and then failed to file a single motion in accordance with the deadlines set by the Court. But while such conduct is clearly unprofessional and likely dilatory, Plaintiff has not argued that it "result[ed] in the loss of evidence, create[d] increased difficulties of discovery, or provide[d] greater opportunity for fraud or collusion." *Guthrie*, 349 F.R.D. at 71. This factor therefore favors vacating the entry of default. Nonetheless, given the willfulness of Defendant's conduct and her failure to assert a meritorious defense, as discussed below, this factor holds little weight. *See NDF1, LLC v. Verwayne*, No. 24-CV-5584, 2025 WL 1400067, at *4 (E.D.N.Y. May 14, 2025) ("As in most cases, plaintiff cannot show much prejudice by this delay. But in light of defendants' willful default and utter lack of defense, it doesn't have to.").

C.      **Meritorious Defense**

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage. A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Id.* at *3. Despite this low threshold, "a defendant must still articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *Durso*, 2019 WL 2150424, at *9.

The defenses in Defendant's opposition relate to the foreclosure proceeding initiated against her in 2010.[7] She argues that the "current federal foreclosure action is impermissible

---

[7] As noted, on June 23, 2025, the day before the adjourned return date of the OSC, Mr. Gippetti emailed a document arguing that there were issues of fact as to default and standing, as if Plaintiff had moved for summary judgment rather than a default judgment. In her formal opposition Defendant seems to have abandoned these arguments in favor of those discussed in the text. In an excess of caution, I explain why I found those arguments unpersuasive at the June 24 proceeding and still do.

First, Defendant claimed that the affidavit submitted by Plaintiff was insufficient because it "does not appear to be notarized" and "does not actually identify or discuss any of the business records attached to [the] affidavit as it relates to Defendant's alleged default." As I explained on June 24, the affidavit did not need to be notarized, as it was signed under penalty of perjury. (*See* Lopez Aff.) *See also* 28 U.S.C. § 1746; *Ayers v. SGS Control Servs., Inc.*, No. 03-CV-9078, 2007 WL 3171342, at *5 n.4 (S.D.N.Y. Oct. 9, 2007). As to the sufficiency of the affidavit itself, the Court pointed out that Plaintiff had attached payment records demonstrating Defendant's failure to pay, (*see* Minute Entry dated June 24, 2025; Lopez Aff. Ex. P), and the affiant set out on her personal knowledge the foundation for the admissibility of the attached business records, (Lopez Aff. ¶¶ 2-3). Even according to the case cited in Defendant's opposition, this is sufficient to demonstrate Defendant's default. *See U.S. Bank Nat'l Ass'n v. Zakarin*, 175 N.Y.S.3d 284, 287 (2d Dep't 2022) (default can be established by "documents that meet the requirements of the business records exception to the rule against hearsay," accompanied by an affidavit from "someone with personal knowledge of the maker's business practices and procedures"); *see also Blue Castle (Cayman) Ltd. v. Miller*, 772 F. Supp. 3d 416, 425 (S.D.N.Y. 2025) (affidavit from mortgage holder's authorized representative confirming that payments had not been made, accompanied by payment history document created by loan servicer, was sufficient to establish default). Moreover, Defendant does not dispute that she defaulted. (D's Aff. ¶ 8.)

Next Defendant attempted to challenge Plaintiff's standing to bring a foreclosure action, claiming that the assignment of mortgage that Plaintiff attached to the affidavit did not

10

under New York RPAPL Section 1301(3) and the Foreclosure Abuse Prevention Act because a prior foreclosure action remains pending." (D's Opp. at 3.) To support her contention that the prior action "remains open," Defendant attaches a screenshot of the "appearance details" section for this case pulled from the New York e-Courts website, the last entry of which involves the vacatur of an order of reference. (D's Opp. at 6; *id.* Ex. B.) But it is entirely unclear why Defendant and her attorney believe that the appearance details page is at all relevant to the case status. Indeed, searching the case on New York e-Courts – which Defendant's counsel presumably did in order to locate the appearance details page – immediately shows that the case status is "DISPOSED."[8] *See* N.Y. State Unified Court System, https://iapps.courts.state.ny.us/webcivil/FCASSearch (input index number 0003023/2010, select Westchester Supreme Court, and click "Find Case(s)") (last visited July 28, 2025).

---

demonstrate assignment of the note. While Defendant is correct that "a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it," *Bank of NY v. Silverberg,* 926 N.Y.S.2d 532, 537 (2d Dep't 2011), "physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation," *Blue Castle (Cayman) Ltd.*, 772 F. Supp. 3d at 424. Plaintiff has adequately shown physical possession of the note both by attaching a copy of the note to its complaint, (Compl. Ex. B), and by confirming that it was in physical possession of the note prior to initiating the foreclosure action, (Lopez Aff. ¶ 5). *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016) ("New York courts have repeatedly held that proof of physical possession – such as the affidavits of [plaintiff bank's] corporate representative and counsel in this case – is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note."); *U.S. Bank Nat'l Ass'n v. Fabbro*, 145 N.Y.S.3d 542, 545 (2d Dep't 2021) ("plaintiff established its standing to commence the action by demonstrating that it had physical possession of the note prior to the commencement of the action, as evidenced by its attachment of a certified copy of the original note, endorsed in blank, to the summons and complaint"). Nor did Mr. Gippetti at the hearing provide a basis to contest that Plaintiff had standing based on physical delivery of the note.

Accordingly, even if Defendant had pursued these arguments, they would have failed.

[8] "A court may take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases." *Khatskevich v. Shapiro*, No. 23-CV-9160, 2025 WL 833872, at *6 (S.D.N.Y. Mar. 17, 2025); *see Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice . . . .").

11

Moreover, as Plaintiff points out, (P's Reply at 5; *id.* Ex. A), the parties, upon finalizing the 2014 loan modification, filed a stipulation of discontinuance disposing of the case, which is publicly available (not to mention signed by Defendant's counsel in that action). And Defendant's claimed belief that the 2010 foreclosure action was still ongoing in 2024 is belied by the fact that she made timely payments pursuant to this loan modification from 2014 until 2022. (*See* Lopez Aff. Ex. P.)

Defendant also argues that this prior action accelerated the loan, and that the current action is therefore barred by the six-year statute of limitations for mortgage foreclosure actions. (D's Opp. at 6-7.) *See* New York C.P.L.R. § 213(4). In such actions, each missed installment payment starts the limitations period for a claim as to that installment, but the six years begins to run on the entire amount if the lender accelerates the debt, including by commencing a foreclosure action seeking the full amount. *See 53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021). But a lender "may revoke its election to accelerate the mortgage . . . by an affirmative act of revocation occurring during the six-year statute of limitations period subsequent to the initiation of the prior foreclosure action," such as by reinstating installment payments via a modification agreement. *See DePalma v. RoundPoint Mortg. Servicing Corp.*, 153 N.Y.S.3d 518, 520 (2d Dep't 2021) (modification agreement revoked prior acceleration because it "evinced a clear intent by [the lender], with the [borrower's] knowledge and consent, to revoke the lender's prior election and reinstate the [borrower's] right to repay the underlying debt in monthly installments, subject to the new terms and conditions set forth in the modification agreement"); *Emigrant Bank v. McDonald*, 153 N.Y.S.3d 30, 34 (2d Dep't 2021) ("[The] loan modification agreement entered into between the plaintiff and the borrowers, demonstrated, *prima facie*, that the plaintiff revoked its prior election to accelerate the mortgage

debt less than six years after the commencement of the [prior] action."). Thus, the 2014 modification agreement effectively revoked the 2010 acceleration, and the six-year statute of limitations did not begin to run until 2022, when Defendant defaulted under the terms of the agreement as modified. *See U.S. Bank Tr., N.A. v. Rudick*, 102 N.Y.S.3d 66, 67 (2d Dep't 2019).

Moreover, even if this agreement had not revoked the acceleration of the loan, Defendant continued making payments until she defaulted on the payment due in September 2022. (*See* Lopez Aff. Ex. P.) Given that these payments were in accordance with the modified agreement, they also sufficed to reset the statute of limitations. *See* N.Y. Gen. Oblig. L. § 17–107(2)(b); *Comito v. Z & N Enters. Corp.*, 216 N.Y.S.3d 643, 645 (2d Dep't 2024) ("A partial payment on account of the indebtedness secured by a mortgage, is effective to revive an action to recover such indebtedness in favor of the mortgagee, provided that the payment was accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder."); *Wells Fargo Bank N.A. v. Grover*, 86 N.Y.S.3d 299, 301 (3d Dep't 2018) (to the same effect).[9] Accordingly, Defendant's argument that the instant action is untimely fails.

The balance of factors weighs strongly against vacatur of the entry of default and in favor of entry of a default judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to vacate the clerk's entry of default is DENIED. Defendant has not objected to the calculations in Plaintiff's proposed judgment of

---

[9] HSBC makes two additional arguments as to why the statute of limitations should not bar this action. But because I find that Defendant's statute of limitations argument fails due to the 2014 loan modification agreement and her subsequent payments, I need not address these arguments.

foreclosure and sale, and the Court therefore could enter the proposed judgment, but in an excess of caution Defendant may have until August 6, 2025 to raise any objection to Plaintiff's calculations, and if she does so, Plaintiff may respond by August 13, 2025.

**SO ORDERED.**

Dated: July 30, 2025
      White Plains, New York

_____
             CATHY SEIBEL, U.S.D.J.